934 F.2d 322
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Karriem Ali SHABAZZ, Qaaisin Ghani, formerly known as Willie
Perry, Plaintiffs-Appellees, (89-6145)
Cross-Appellants, (89-6149)
Karriem Akbar Abdullah, et al., Plaintiffs, (89-6145)
v.
Stephen H. NORRIS, et al., Defendants-Appellees, (89-6149)
Defendants, (89-6145)
Donnie Noles, Warden, et al., Defendants-Appellants,
(89-6145) Cross-Appellees, (89-6149)
 Nos. 89-6145, 89-6149.
 United States Court of Appeals, Sixth Circuit.
 May 31, 1991.
 
 Before KEITH and DAVID A. NELSON, Circuit Judges, and JOHN W. PECK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a district court judgment disposing of actions brought under 42 U.S.C. Sec. 1983 by Muslim inmates at a state correctional facility. The district court denied the plaintiffs' claims for damages but granted their requests for injunctive relief. On appeal, the defendants present three assignments of error: (1) that the district court was without authority to order injunctive relief regarding the inmates' food and menus; (2) that requiring the presence of a "free world sponsor" does not violate the inmates' rights under the Free Exercise Clause of the First Amendment of the United States Constitution, as made applicable to the states by the Fourteenth Amendment; and (3) that the district court erred in requiring the defendants to change prison records upon request to reflect the inmates' Muslim names. One of the plaintiffs, Qaaisin Ghani, has filed a cross-appeal alleging that the district court erred in granting defendant Thomas Murley's motion for a directed verdict with respect to the issue of monetary relief.
 
 
 2
 We conclude that the district court properly granted the motion for a directed verdict, but we agree with the defendants that the scope of the court's injunction was too broad. Accordingly, we shall affirm the judgment in part, vacate it in part, and modify it in part.
 
 
 3
 * In September of 1981, three inmates at the Fort Pillow State Farm (Abdullah Jihad Al-Jaami, Karriem Ali Shabazz, and Herbert Abdus Salaam) sued various prison officials under 42 U.S.C. Sec. 1983. The complaint alleged, among other things, that the defendants had violated the First Amendment rights of Muslim inmates (1) by forbidding them from holding group religious services in the absence of an outside sponsor, known as a "free world sponsor," and (2) by refusing to issue name badges bearing the inmates' Muslim names.
 
 
 4
 In August of 1983, Mr. Shabazz filed a second Sec. 1983 action with different co-plaintiffs (Asad Mujihad and Qaaisin Ghani). This complaint alleged, in pertinent part, that the prison had failed to provide constitutionally adequate substitutes for pork, and that the director of food services, defendant Charles Hendrix, and one of his employees, defendant Thomas Murley, had intentionally served pork to Muslim inmates.
 
 
 5
 Both complaints, it should be noted, prayed for monetary, declaratory, and injunctive relief.
 
 
 6
 In 1985 these cases were consolidated with four other actions filed by Muslim inmates in the Western District of Tennessee. The entire matter was assigned to Judge Robert McRae and was tried to a jury. At the close of the plaintiffs' proof, the district court directed a verdict for the defendants with respect to the plaintiffs' damage claims. The trial then resumed without a jury to determine whether equitable relief might be appropriate.
 
 
 7
 Based on the evidence presented, the district court concluded that the plaintiffs were entitled to an injunction. The terms of that injunction read as follows:
 
 
 8
 "IT IS THEREFORE ORDERED that the Warden of Ft. Pillow State Farm and his subordinate officials and officers are hereby enjoined:
 
 
 9
 1. To continue to recognize and permit Muslim inmates to have religious services at Ft. Pillow State Farm as reasonable and necessary to comply with the practices and beliefs of the Muslim faith. These services shall include Jumah Prayer weekly and Ramadan.
 
 
 10
 A. No prior pledge of sincerity and total observance of all tenets of the Muslim faith shall be required in order to attend the services; provided, however, any person other than an enquirer of the faith or a participant in the religious service and prison personnel who are present at the request of Muslims or necessary to preserve the rules and regulations of the institution, shall be denied permission to attend.
 
 
 11
 B. There shall be no absolute requirement that a free world sponsor shall be present at all services provided that an inmate leader of the group shall be responsible for seeing that the gatherings and meetings shall be used only for religious purposes and that no rules of the institution shall be violated nor shall there be plans or promotions for rule violations or protests for rule violations or protests other than for religious purposes.
 
 
 12
 C. Jumah prayer shall be called out at a reasonable time prior thereto, but no inmate shall be allowed to attend without obtaining permission from his supervising officer at the time. Each inmate who attends shall sign in and out only for himself and return to his proper station immediately after the service ends.
 
 
 13
 D. Appropriate space shall be provided for services and meetings of the Muslims with due consideration for privacy and lack of interference as appropriate.
 
 
 14
 2. To offer a menu and food to Muslims and persons observing the Muslim diet, which does not contain any pork or pork products.
 
 
 15
 A. Reasonable and regular checks and safeguards shall be made to prevent the serving of pork to persons who are observing the Muslim diet for religious purposes.
 
 
 16
 B. Palatable substitutes of equal nutritional value shall be made when the regular menu calls for pork products or food cooked with pork products.
 
 
 17
 C. The provisions of these injunctions may be reasonably altered or expanded as exigent circumstances dictate, to grant the Muslim inmates the First Amendment freedom of religion rights guaranteed by the Constitution and to permit the Ft. Pillow State Farm officials and other employees to perform the duties imposed upon them as custodians of persons committed to confinement for violation of criminal laws of the State of Tennessee."
 
 
 18
 It is this order from which the defendants have appealed. The cross-appeal of plaintiff Qaaisin Ghani is limited to the question whether the district court erred in dismissing Mr. Ghani's claim for monetary relief against defendant Thomas Murley, the food service steward who allegedly served pork to Mr. Ghani on purpose.
 
 II
 
 19
 * The defendants maintain that the district court erred in granting injunctive relief regarding the inmates' food and menus. We agree.
 
 
 20
 It is well settled that a federal court may not award relief which is " 'broader than necessary to remedy the constitutional violation.' " Kendrick v. Bland, 740 F.2d 432, 437 (6th Cir.1984) (quoting Newman v. Alabama, 683 F.2d 1312, 1319 (11th Cir.1982), cert. denied, 460 U.S. 1083 (1983)). Where there is no "continuing violation of federal law, [there is] no occasion to issue an injunction." Green v. Mansour, 474 U.S. 64, 73 (1985).
 
 
 21
 In the case at bar, the district court expressly found that "the plaintiffs have not established any right to relief based upon their claims that their rights have been violated by the [prison's] food and menu practices...." Accordingly, the district court was without authority to issue injunctive relief with respect to those practices.
 
 B
 
 22
 The defendants also contend that requiring the presence of a free world sponsor at Muslim religious services does not violate the plaintiffs' rights under the First Amendment.
 
 
 23
 The Supreme Court's decision in Turner v. Safley, 482 U.S. 78, 89 (1987), teaches that "when a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." The Court has emphasized, however, that "the governmental objective must be a legitimate and neutral one." Id. at 90 (emphasis supplied). It is "important to inquire whether prison regulations restricting inmates' First Amendment rights operate[ ] in a neutral fashion, without regard to the content of the expression." Id.
 
 
 24
 As a general matter, we agree that requiring an outside sponsor to be present during religious services is reasonably related to the state's legitimate penological interests; the requirement helps to insure that a given group retains its religious purpose and that it does not pose a threat to prison security. See, for example, Jones v. Bradley, 590 F.2d 294, 296 (9th Cir.1979). In the case at bar, however, the district court found as a matter of fact that the requirement was not applied in a neutral manner:
 
 
 25
 "Similar requirements were not made of the other faiths or religions although there were more free world Christians available to assist with those services." The defendants have offered no evidence on appeal to suggest that this finding of fact was clearly erroneous. Accordingly, we shall direct that the injunction be modified to permit the defendants to require the presence of a free world sponsor, but only to the extent that the requirement is applied in a neutral manner.
 
 C
 
 26
 The defendants argue, finally, that the district court erred in requiring them to change prison records upon request to reflect the inmates' Muslim names. As we read the injunction, it contains no such requirement. The district court did observe from the bench that it would be "proper and more appropriate to issue I.D. badges in the Muslim name," but the order itself is silent on this subject.
 
 III
 
 27
 Plaintiff Qaaisin Ghani maintains that the district court erred in granting a directed verdict for defendant Thomas Murley with respect to the claim for money damages. A directed verdict is appropriate if it is clear that " 'reasonable people could come to but one conclusion from the evidence.' " Lewis v. Irvine, 899 F.2d 451, 454-455 (6th Cir.1990) (citation omitted). Because Mr. Murley testified without contradiction that he did not prepare the food that allegedly contained the pork, the district court properly granted his motion for a directed verdict.
 
 
 28
 In light of the above analysis, paragraph 2 of the injunction, dealing with food and menus, is hereby VACATED. Paragraph 1, subparagraph B, shall be MODIFIED by the district court to read substantially as follows: "The requirement of a free world sponsor, to the extent that such a requirement exists, is to be applied in a neutral manner to all inmates at the Fort Pillow State Farm, without regard to their religious affiliation." The remainder of the district court's judgment is AFFIRMED.